## SUCESORES DE JOSE MARIA ORTIZ v. ROYAL BANK OF CANADA.

### No. 2849.

Circuit Court of Appeals, First Circuit.

Feb. 16, 1934.

Francis H. Dexter, of San Juan, P. R., for appellants.

Henri Brown, of San Juan, P. R., for appellee.

Before WILSON and MORTON, Circuit Judges, and MORRIS, District Judge.

WILSON, Circuit Judge.

This is an appeal from a decree of the District Court of Puerto Rico in a suit in equity brought by the appellee, under which decree twelve certain promissory notes, held by the appellee as a pledge to secure the payment of a certain other promissory note of the appellant in the principal sum of $200,000 and payable to the appellee, were sold and the proceeds applied on the $200,000 note, and a deficiency judgment entered against the appellant.

The appellant is an agricultural and industrial partnership organized and existing under the laws of Puerto Rico, with offices and domicile in the city of Humacao in Puerto Rico. The appellee is a banking corporation organized under the laws of Canada and having its principal office and domicile in Montreal, Canada, and hereinafter referred to as the Bank.

The partnership was originally composed of Vicente Ortiz Lopez and Juan Cruz Ortiz Pagan. The later having died, the partnership at the time of the beginning of this suit consisted of his heirs, Julia Stella Lebron, his wife, and his children, Cruz, Julio, Francisco, Angela, Aurea, Gustavo, and Luis Ortiz Stella. The two last named at the time of bringing this suit were minors, and a guardian ad litem was appointed to represent them.

The record is somewhat barren of facts in explanation of the occasion and reason for the rather unusual transaction between these parties.

On September 6, 1929, the Sucesores was indebted to the Bank for moneys already advanced from time to time in the sum of $200,000, and, in addition, the sum of $100,000 as an agricultural refectionary loan.

On the above date the Sucesores gave its promissory note for the sum of $200,000, and to secure the same and the agricultural loan also signed twelve promissory notes, each for the sum of $25,000, guaranteed by a mortgage on the sugar plantation of the partnership, which notes and mortgage of the real estate were on the same day delivered to the Bank as a pledge to secure the payment of the note for $200,000 and the refectionary loan of $100,000. The refectionary loan was paid prior to commencement of this suit, but by the terms of the pledge none of the pledged notes were to be released, but were still to be retained by the Bank as security for the $200,000 note and any additional sums that might be due the Bank from the partnership.

On April 15, 1932, the note for $200,000 on which interest amounting to $19,150.84 was due was presented to the partnership for payment. The partnership failed to pay, and its representative stated that it was unable to do so, whereupon this suit in equity was begun, setting forth the facts and praying

that the pledged notes be sold at public auction and the proceeds applied on the indebtedness of the partnership to the Bank.

After a hearing at which the partners offered no evidence, and, excepting the minors, admitted the facts set forth in the bill of complaint, and substantially as stated above, the District Court ordered a sale of the pledged notes at a public sale, at which the Bank under the pledge was permitted to bid, and as the highest bidder acquired the notes for the sum of $150,000; and, on motion of counsel for the Bank, a deficiency judgment against the partnership was ordered in the sum of '$87,002.99, plus interest from April 12, 1933.

The partnership opposed the decree of a deficiency judgment on the ground that the original indebtedness of the defendant was only $300,000, on which there had been paid the sum of $100,000 in payment of the refectionary loan; that the twelve notes for $25,000 each were issued merely as a guaranty or security; that the twelve notes and mortgage were given without consideration; and that, if the Bank should hold the twelve notes for $25,000 each against the defendant and collect them, the result would be that the defendant might be compelled to pay its indebtedness twice. The answer of the members of the partnership, except the minors, admits that the pledged notes were given for a good and valid consideration, which may well have been a forbearance to enforce payment of the then existing indebtedness.

On May 24, 1933, following the decree of a deficiency judgment, the Bank filed a petition to foreclose the mortgage given by the partnership to secure the pledged notes, and to sell that part of the hacienda or plantation still remaining in the partnership.

On October 14, 1933, an execution was issued based on the deficiency judgment, and a levy was made upon the hacienda or cane plantation, covered by the mortgage to the Bank, and notice of sale given by the United States marshal of that district to be held on November 22, 1933; whereupon the appellant petitioned this court to order the appellee to suspend all efforts to collect the deficiency judgment and issue an order of supersedeas pending its appeal from the order of deficiency judgment; and to continue the sale under foreclosure proceedings until the issues raised by its appeal were determined; but set forth in its petition that the partnership was unable to furnish a bond by reason of the losses it had suffered since the indebtedness was in-

curred in connection with its plantation and other properties. This petition was denied.

From its petition on file in this court in November, 1933, it appeared that out of approximately 2,300 cuerdas, of which the original plantation consisted, approximately 2,260 cuerdas, prior to the order of sale under the foreclosure proceedings, had been sold for taxes, and to protect its security had been purchased by the Bank at a tax sale; that the right of redemption from the tax sale had expired, and the absolute title had become vested in the Bank prior to the date on which the sale was ordered to be made.

The Bank appears to have proceeded within its rights under its pledge and mortgage, Robinson v. Hurley, 11 Iowa, 410, 79 Am. Dec. 497; Pomeroy's Eq. Juris (4th Ed.) § 1231; Land Title & Trust Co. v. Asphalt Co. of America (C. C.) 121 F. 192; Ingram v. Mandler (C. C. A.) 56 F.(2d) 994; Manresa's Commentaries, vol. XII, p. 466; and the unfortunate situation in which the partnership now finds itself is due to the fact that it has been unable to protect itself by reason of the losses it has suffered. As in case of many other mortgagors within the past three years, if it had been able to meet its obligations, its notes would have been canceled and its mortgage discharged.

In any event, the result is no different from what may occur whenever a debtor gives as security for indebtedness property of value in excess of the amount of his indebtedness and through unexpected reverses is unable to meet his obligation, and as a result loses his mortgaged or pledged property by foreclosure. The Bank, to secure a large loan in a foreign country where values of sugar plantations fluctuate, took as a pledge or security for the loan the same kind of chose in action as the evidence of the indebtedness itself, and in an equal amount secured by a mortgage on the plantation of the partnership, and was permitted under the pledge agreement to purchase the pledged notes if sold at public auction. Any seeming inequity arises from the fact that the pledge agreement allowed the Bank after the refectionary loan was to be paid to retain the twelve $25,000 notes as security for the $200,000 loan.

The partnership, however, has received credit for the proceeds of the sale of the pledged notes, but the Bank has not yet received any part of its loan through the liquidation of the pledged notes themselves. It still must hold them and realize the amount of its loan from the collection of the pledged

notes—if they are collectible—from its deficiency judgment, and from the real estate.

In the final analysis the Bank, in place of a note for $200,000 of doubtful value, now has twelve notes for $300,000 of equally doubtful value, a deficiency judgment for $87,002.99, and a plantation of 2,300 cuerdas, all but 40 cuerdas of which it has acquired by virtue of a tax deed. Inasmuch as the appellants could not raise sufficient funds to procure a supersedeas bond in case the deficiency judgment was stayed, and now plead their inability to pay even a lawyer for preparing and filing a brief in this case, it would appear that the chances of the Bank even recovering the amount of its original loan are very doubtful.

The defenses raised against the Bank's proceedings do not appear to have been always prosecuted with vigor. The minors who, it is suggested, are now of age, did not join in the objection to the deficiency judgment, nor in the appeal to this court. It is not claimed that any fraud was practiced upon the partnership in obtaining the pledge. The partnership entered into the pledge agreement and mortgage with its eyes open, and must be presumed to have fully realized the possible consequences of its act. The record before this court does not warrant a reversal or modification of the decree of the District Court.

The decree of the District Court is affirmed, with costs in this court.